NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT HARRISON,<br><br>Plaintiff,<br><br>v.<br><br>NERVEDA, LLC and THE BOARD OF DIRECTORS OF NERVEDA, LLC,<br><br>Defendants. | Civil Action No. 15-1373 (JLL) (JAD)<br><br>REPORT AND RECOMMENDATION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendant Nerveda, LLC's ("Defendant Nerveda") Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) or, in the alternative for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 4). The Hon. Jose L. Linares, U.S.D.J referred the Motion to this Court for a Report and Recommendation. Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument on this matter. Upon careful consideration of the parties' submissions, and for the reasons stated below, it is the recommendation of this Court that Defendant's unopposed Motion to Dismiss be **GRANTED**.

I. BACKGROUND

Plaintiff Scott Harrison ("Plaintiff"), a resident of New Jersey, founded Defendant Nerveda together with Cam Gallagher, Defendant Nerveda's current CEO. (Compl. ECF No. 1, ¶¶ 1, 12). Defendant Nerveda is a "limited liability company organized and existing under the laws of the State of Delaware and conducts business in the State of New York and the State of Delaware," with its principle office located in San Diego, California. (Id. ¶ 2). Defendant Nerveda is engaged

1

in the business of "identifying, developing and selling life science and other technology assets." (Decl. of Cam Gallagher ("Gallagher Decl."), ECF No. 4-1, ¶ 2).

This matter concerns an alleged 2012 oral agreement ("the Agreement") in which Plaintiff allegedly agreed to seek out investors for Defendant Nerveda in exchange for a "'fund-raisers fee' of 10%." (Compl., ECF No. 1, ¶ 23). Defendant Nerveda allegedly required funds in order to further develop DioGenix, a pharmaceutical company and subsidiary of Defendant Nerveda. (Id. ¶¶ 14, 19). Plaintiff alleges that Defendant Nerveda and its board of directors ("the Board")[1] (collectively "Defendants") failed to compensate him for his services and, as a result, Plaintiff is entitled to damages resulting from a breach of contract and unjust enrichment. (Id. at 14-15). The circumstances surrounding the parties' transaction are of particular importance in the context of this Motion, as Defendant Nerveda contends that it has not made the sort of "minimum contacts" with New Jersey necessary to subject them to personal jurisdiction in this District.

Plaintiff met with Robert Ades, a then member of the Board, and discussed the possibility of Plaintiff receiving a "fund-raisers" fee in exchange for Plaintiff approaching investors to raise two (2) million dollars, or more, to fund DioGenix. (Id. ¶¶ 16, 21). Plaintiff alleges that this discussion occurred just prior to an in-person board meeting during which "everyone agreed that if Plaintiff was able to accomplish this task, he should receive the standard commission for his

---

[1] Defendant Nerveda argues that the Board "is not a legal entity capable of serving as a defendant in a litigation," Plaintiff "has not named any member of the board as a defendant, much less served a particular director with the Complaint," and that Plaintiff's "pleading sets forth no facts that could possibly support imposing personal liability upon a Nerveda director for the contract the company supposedly entered with" Plaintiff. (Def. Br., ECF No. 4-2, at 9). The Court will not address Defendant Nerveda's arguments in this regard. The instant Motion to Dismiss was filed on behalf of Defendant Nerveda and the Court shall only address the arguments pertaining to it. The Court does note, however, that on July 29, 2015, Judge Linares entered a Notice of Call for Dismissal pursuant to Federal Rule of Civil Procedure 4(m) "for failure to effect service of the summons and complaint upon . . . [the] Board of Directors of Nerveda, LLC." (ECF No. 5, at 1).

2

upcoming efforts." (Id. ¶ 23). This discussion, and all in-person board meetings, took place in New York. (Gallagher Decl., ECF No. 4-1, ¶ 6).

Beginning in June 2012, while in his office in Fort Lee, New Jersey, Plaintiff sought investors who might be interested in investing in the company. (Compl., ECF No. 1, ¶ 24). All meetings "with potential new investors . . . took place in New York City." (Gallagher Decl., ECF No. 4-1, ¶ 9). Between 2012 and 2013, Plaintiff introduced new investors to the Board, raising $2,280,000. (Compl., ECF No. 1, at 26, 30; Gallagher Decl., ECF No. 4-1, ¶¶ 7-9). While in New York, the Board then told Plaintiff that his fund-raisers fee was being "put on hold" and "withheld". (Compl., ECF No. 1, ¶ 30; Gallagher Decl., ECF No. 4-1, ¶ 6).

Plaintiff further alleges that in November 2012, at a meeting in White Plains, New York, Michael Breede, a new investor in Defendant Nerveda, and an unnamed Board member, told Plaintiff that "when the new Board is set", Plaintiff would receive his fund-raisers fee. (Compl., ECF No. 1, ¶ 33). Shortly after, Defendant Nerveda proceeded to invest in Zogenix, a pharmaceutical company, using the funds procured from the new investors Plaintiff had introduced, which Plaintiff opposed. (Id. ¶¶ 32-35). Plaintiff alleges the funds that Defendant Nerveda used to invest in Zogenix had been earmarked for investment in DioGenix. (Compl., ECF No. 1, at 9-10). Plaintiff also alleges that he urged the Board to liquidate its investment in Zogenix, so that Defendant Nerveda could reinvest in DioGenix and pay Plaintiff his fund-raisers fee. (Id.) The Board voted to only "sell a small percentage of its position", and soon after the value of Zogenix stock plummeted, following FDA disapproval of a Zogenix drug, which ultimately impacted the money available to DioGenix. (Id. ¶ 35).

According to Plaintiff, serious disputes arose between him and several Board members over Defendant Nerveda's investment in Zogenix and the withholding of Plaintiff's fund-raisers

3

fee. (Id. ¶¶ 42–45). Plaintiff alleges that he did not receive payment for the services he rendered to Defendant Nerveda, (id. ¶ 46), and as a result filed a Complaint in this Court on February 23, 2015. (Compl., ECF No. 1). Plaintiff alleges two (2) causes of action against Defendants, specifically, a breach of contract claim and a claim of unjust enrichment. (Id.)

On April 6 2015, Defendant Nerveda filed a motion seeking to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(2) arguing that they are not subject to personal jurisdiction in New Jersey. In addition, Defendant Nerveda argues that Plaintiff's claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6), as he has failed to make allegations sufficient to demonstrate plausible entitlement to relief. (Def. Br. ECF. No. 4-2). Alternatively, Defendant Nerveda argues that if "the Court decides that it must convert the motion to one for summary judgment," New York Law governs Plaintiff's claims and that the New York Statute of Frauds "bars the enforcement of unwritten contracts to provide finder's services like those [Plaintiff] allegedly performed." (Id. at 12-15). Plaintiff did not oppose Defendant Nerveda's Motion. This Court shall first address Defendant Nerveda's personal jurisdiction argument.

## II. LEGAL STANDARD AND DISCUSSION

### a. Motion to Dismiss Pursuant to Rule 12(b)(2)

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." Metcalfe v. Renaissance Marine, Inc., 566 F. 3d 324, 330 (3d Cir. 2009) (internal citations omitted). Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "'prima facie case of personal jurisdiction'", Haffen v. Butler Specialities, Inc. et al., No. 10-cv-2833 (DMC), 2011 U.S. Dist. LEXIS 21581,

*7 (D.N.J. March 3, 2011) (quoting Miller Yacht Sales, Inc. v. Smith, 384 F. 3d 93, 97 (3d Cir. 2004)), and the court "is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Metcalfe, 566 F. 3d at 330 (internal citations omitted). Additionally, "if the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." Haffen, 2011 U.S. Dist. LEXIS 21581 at *7 (quoting 4 Wright & Miller, Federal Practice and Procedure: Civil 3d 1067.6 (3d ed. 2002)). The plaintiff, however, retains "'the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction.' These contacts must be shown 'with reasonable particularity.'" Wellness Publ'g v. Barefoot, 128 Fed. App'x 266, 268 (3d Cir. 2005) (brackets and internal citations omitted).

### i. The Legal Boundaries of Personal Jurisdiction

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc., 384 F. 3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Id. (citing N.J. Ct. R. 4:4-4(c)). A district court sitting in New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Henry Heide, Inc. v. WRH Products Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." Metcalfe, 566 F. 3d at 334. General jurisdiction results from, among other things, "systematic and continuous" contact between a non-resident defendant and the forum state.

Spuglio v. Cabaret Lounge, 344 F. App'x 724, 725 (3d Cir. 2009). "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" Miller Yacht Sales, Inc., 384 F. 3d at 96 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). The Court will analyze both grounds for personal jurisdiction in turn.

### ii. General Jurisdiction Analysis

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (citing Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 317 (1945)). "This is a fact-specific inquiry, and the 'nonresident's contacts to the forum must be continuous and substantial' to support the exercise of general jurisdiction." Arpaio v. Dupre, 527 F. App'x 108, 113 (3d Cir. 2013) (internal citations omitted). "The Third Circuit requires a very high showing before a court may exercise general jurisdiction." Benitez v. JMC Recycling Sys., Ltd., No. 13-2737, 2015 WL 1608018, at *3 (D.N.J. Apr. 10, 2015) (internal quotations and citations omitted).

There is no basis to conclude that Defendant Nerveda is "essentially at home" in New Jersey. See Goodyear, 131 S. Ct. at 2851. Defendant Nerveda does not hold itself out as doing business in New Jersey, is not incorporated in New Jersey, does not maintain an agent for service of process in New Jersey, does not conduct any operations in New Jersey, and does not maintain any offices or own any assets in New Jersey. (Compl., ECF No. 1; Gallagher Decl., ECF No. 4-1, ¶¶ 10-11). In fact, it appears as though the only mention of New Jersey in the Complaint is in

connection with Plaintiff's domicile and Plaintiff's place of business. (Compl., ECF No. 1, at 1, 4, 7).

Despite bearing the burden of demonstrating that Defendant Nerveda's contacts with New Jersey are sufficient to allow the Court to exercise personal jurisdiction over Defendant Nerveda, Plaintiff failed to oppose Defendant Nerveda's Motion. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) ("[T]he burden of demonstrating the facts that establish personal jurisdiction, falls on the plaintiff, and once a defendant has raised a jurisdictional defense, the plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper") (internal citations and quotations omitted). The Court cannot, therefore, assert general jurisdiction over Defendant Nerveda.

### iii. Specific Jurisdiction Analysis

Specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." Abel v. Kirbaran, 267 F. App'x 106, 108 (3d Cir. 2008) (internal citations and quotations omitted). Three elements must be met to establish specific jurisdiction. HS Real Co., LLC et al. v. Sher, 526 F. App'x 203, 206 (3d Cir. 2013). First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. Id. Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." Id. (internal citations and quotations omitted). Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). The Court notes that a specific jurisdiction analysis is claim-specific. Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001) (analyzing specific jurisdiction over tort and contract claims separately). In this case, however, it appears as though Plaintiff's unjust

7

enrichment claim stems from the alleged breach of contract. The Court will therefore, assess Plaintiff's breach of contract claim in order to determine whether or not this Court has specific jurisdiction over Defendant Nerveda.

### 1. **Purposeful Availment**

When analyzing purposeful availment in breach of contract cases, courts may look to "prior negotiations" and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Control Screening LLC v. Technological Application and Production Company (Tecapro), 687 F.3d 163, 168 (3d Cir. 2012) (quoting Burger King Corp., 471 U.S. at 479). The Third Circuit has held that traveling to the forum state to consult with the other party can constitute purposeful availment, regardless of who solicited the contact. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992). Moreover, physical presence in the forum is no longer determinative in light of modern commercial business arrangements; rather mail and wire communication can constitute purposeful acts when sent into the forum state. Burger King, 471 U.S. at 476 (acknowledging that "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."). The Court also notes that "[c]ontracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant." Mellon Bank (East) v. DiVeronica Bros., Inc., 983 F.2d 551, 557 (3d Cir. 1993) (citing Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1222 (3d Cir. 1992).

Defendant Nerveda argues that "other than entering the purported contract to pay the Finder's Fee[2] to [Plaintiff] – a New Jersey resident – the complaint asserts no facts that tie [Defendant] Nerveda to New Jersey." (Def. Br., ECF No. 4-2, at 8).

> Moreover, even the Finder's Fee contract bears only the slightest relationship to this state since: (a) Harrison introduced the idea of entering the Finder's Fee agreement in New York; (b) all of the discussions concerning the terms of that agreement took place in New York; (c) the contract was consummated in New York; and (d) Harrison performed his services by introducing Nerveda to investors in New York. These facts are irreconcilable with exercising jurisdiction over Nerveda in this state.

(Id.) (citing Compl., ECF No. 1, ¶¶ 21-26; Gallagher Decl., ECF No. 4-1, at ¶¶ 5-9). The available record, even while read in Plaintiff's favor, does not indicate that Defendant Nerveda purposefully availed itself of the privilege of conducting activities in the state of New Jersey. Unlike in Carteret Sav. Bank, FA, 954 F.2d 141, Plaintiff does not allege that any of Defendant Nerveda's representatives traveled to New Jersey. (See generally Compl., ECF No. 1). In fact, according to Plaintiff's recitation of the facts, Plaintiff was often the party traveling for meetings in New York. (Id.). Apparently all in-person contact between Plaintiff and Defendant Nerveda took place outside of New Jersey.

While physical presence in New Jersey is not required for a finding of purposeful availment in light of Burger King Corp., 471 U.S. 462, Plaintiff has not alleged other facts that would support a finding that Defendant Nerveda's efforts were "purposefully directed" toward New Jersey. Though Plaintiff alleges in his Complaint that the Board was "constantly apprised of the progress in Plaintiff's fund raising activities," (Compl. ECF No. 1, ¶ 28), Plaintiff has failed to specify the locations from which the parties conducted these communications and the Court will not speculate

---

[2] Defendant Nerveda refers to the "Finder's Fee" interchangeably with the "fund-raisers fee" that was allegedly promised in the Agreement.

9

as to their whereabouts, especially considering Plaintiff's apparent propensity to travel to the Defendants. As such, the Court need not address whether the "mail and wire communication" between the parties constitute purposeful acts sent into New Jersey. See Burger King, 471 U.S. at 476.

The mere fact that Defendant Nerveda allegedly contracted with Plaintiff, a resident of New Jersey, is not enough to establish the minimum contacts necessary to justify the exercise of specific jurisdiction over it. See Mellon Bank (East), 983 F.2d at 557. Plaintiff, in his failure to oppose Defendant's Motion entirely, has not met his burden in establishing Defendant Nerveda purposefully availed itself of the privilege of conducting activities within the forum. See Metcalfe, 566 F.3d 324. As such, the Court need not address the remaining factors necessary to establish specific jurisdiction.

Given this Court's finding that there is no personal jurisdiction over Defendant Nerveda, Defendant Nerveda's alternative arguments for dismissal under Federal Rules of Civil Procedure 12(b)(6) and 56, are moot.

### III. CONCLUSION

For the foregoing reasons this Court recommends that Defendant Nerveda's Motion to Dismiss, (ECF No. 4), be **GRANTED**.

_____  8/13/15
JOSEPH A. DICKSON, U.S.M.J.

cc:    Hon. Jose L. Linares U.S.D.J.